IN THE UNITED STATES DISTRICT COURT
FOR THE
NORTHERN DISTRICT OF OHIO

Michael L. Williamson,                    )

            Plaintiff,                    )        CIVIL CASE NO. _____

                    FILED                 )        JUDGE _____

vs.                 AUG 0 4 2022          )

            CLERK, U.S. DISTRICT COURT
            NORTHERN DISTRICT OF OHIO      )        42 U.S.C. § 1983
                  CLEVELAND                        C O M P L A I N T

Rachael Wheeler, et al.,                  )        (JURY TRIAL DEMAND)

Annette Chambers-Smith,                   )        **JUDGE CALABRESE**

            Defendant(s).                          **MAG. JUDGE BAUGHMAN**


I.      **Previous Lawsuits**

        A. Have you begun other lawsuits in state or federal court dealing with the same facts

        involved in this action or otherwise relating to your imprisonment? Yes

        1. Parties to this previous lawsuit:

        Plaintiff, Michael L. Williamosn

        Defendants, Karen Slusher, Trinty Floyd, Timothy Milligan, Alfred Granson, Kelly

        Rose. Shelia Jordan, Maggie Bradshaw, Lt. ____ Spears, John Doe 1, and Christo

            Montgomery.

        2. Court; United States District Court for the Northern District of Ohio

        3. Docket Number; 1:17cv106-SO-DAR

        4. Judge: Solom Oliver Jr., C.J.

        5. Disposition; Case was dismissed and appealed.

        6. Approximate date of filing lawsuit was January 13, 2017.

        7. Approximate date of disposition was October 31, 2017

B. Other Federal Filings

1(a). Parties to lawsuit:

Petitioner; Michael L. Williamosn

Respondent; James Haviland

2(a). Court; United States District Court for the Northern District of Ohio

3(a). Docket Number: 1:04CV629

4(a). Judge: John M. Manos

5(a). Disposition: Denied

6(a). Approximate date of filing was April 1, 2004

7(a). Approximate date of disposition was February 6, 2006

1(b). Parties to lawsuit:

Petitioner; Michael L. Williamosn

Respondent; Dave Marquis

2(b). Court; United States District Court for the Northern District of Ohio

3(b). Docket Number: 1:18CV472

4(b). Judge: Jeffery Helmick

5(b). Disposition: Dismissed in part, denied in part, and appealed

6(b). Approximate date of filing was February 28, 2018

7(b). Approximate date of disposition was November 6, 2018.

II.    **Place of Present Confinement:** Richland Correctional Institution.

A. Is there a prisoner grievance procedure in this institution?   YES.

D. Did you present the facts relating to your complaint in the state prisoner

   grievance procedure?   YES.

C. If your answer is yes,

   1. I filed first the informal complaint, then I filed the grievance,then

   the appeal. (copy attached, Ref.# RICI0522004128), 1of3 pg's., as Ex. D

   2. What was the result? The Informal Complaint/Grievance/Appeal was denied
   and affirmed.

D. If your answer is NO, explain why not:   N / A

E. If there is no prison grievance procedure in the institution, did you com-

   plain to prison authorities?   N / A

F. If your answer is YES,

   1. What steps did you take?   N / A

   2. What was the result?   N / A

III.    **Parties:**

A. Name of the Plaintiff:  Michael L. Williamson.

   Address: Richland Correctional Institution, 1001 Olivesburg Rd., Mansfield,
           Ohio, 44905.

B. Defendant: Rachael Wheeler is employed as a licensed nurse practitioner
             at Richland Correctional Institution, 1001 Olivesburg Rd., Mans-
             field, Ohio 44905.

C. Additional Defendants: Annette Chambers-Smith, Director of the Ohio Depart-
             ment of Rehabilitation and Corrections 4545 Fisher Rd., Suite
             D, Columbus Ohio 43228.

IV.    **Statement of Claim**

1. Michael L. Williamosn, a prisoner of the State of Ohio at Richland

Correctional Institution, is the plaintiff herein, and Rachael Wheeler

("defendant Wheeler"), a licensed practical nurse ("LPN") employed by the

Ohio Department of Rehabilitation  and Corrections at Richland Correctional

Institution and Annette Chambers-Smith ("defendant Chambers-Smith"), director
of the Ohio Department of Rehabilitation and Correction, are the defendants.
Defendant Wheeler is being sued in both her individual/personal and official
capacities. Defendant Chambers-Smith is being sued in her official capacity.

2. On February 29, 2012, Plaintiff suffered an injury to his left leg. The
injury resulted in a metal plate and twelve (12) screws and rods being
installed in plaintiff's leg, leaving him permanently disabled and unable
to stand for any more than five minutes without extreme pain.

3. As a result of plaintiff's injury, plaintiff was wheelchair bound for app-
roximately 2 years.

4. To assist plaintiff in his physical well being, plaintiff was prescribed
an orthopedic mobility device, called a "rollator," by Dr. Granson while
incarcerated in the Marion Correctional Institution.

4. Dr. Granson advised plaintiff that the rollator, which has a built-in seat,
was to assist him in his mobility and to provide a seat when needed to alevaite
any pain plaintiff may be experiencing while standing or walking. Dr. Granson
further advised plaintiff that plaintiff would need the assistance of the
rollator to help aleviate the pain when standing or walking for the rest of
his life.

6. In September of 2015, plaintiff was transferred to Richland Correctional
Institution, where defendant Wheeler is employed as a LPN.

7. Defendant Wheeler's authority, under color of State law, is codified within
Ohio Revised Codes 4723 et seq., and 5120 et seq., Ohio Administrative Code
5120 et seq., and Policy Number 68-MED-01 (applicable through OAC 5120.01).
Defendant Wheeler is not a doctor and, pursuant to State law and Administrative
Code, defendant Wheeler has no legal authority to rescind a doctor's pre-
scription.

4

8. Plaintiff (who is obese) is a recipient of "Chronic Care" treatment where, approximately every 3 to 6 months, he is reevaluated for any adjustments to his Blood-Presure medications.

9. Sometime after April 26, 2022, plaintiff went to the infirmary to resolve an issue with his rollator which was in need of replacement. Plaintiff spoke with a Mr. Gillespie, who offered plaintiff a very small replacement rollator. Plaintiff advised Mr. Gillespie that, due to plaintiff's weight and size, he could not sit or fit in the smaller rollator. Mr. Gillespie agreed, and told plaintiff that an order would have to be placed for a larger rollator- all while Mr. Gillespie complained about the additional costs of a larger rollator. Plaintiff, after speaking with Mr. Gillespie, returned to his housing unit.

10. Approximately two weeks later on May 12, 2022, plaintiff received a doctor sick call pass  (mandatory), to see nurse Wheeler for his scheduled chrinic care appointment. Upon plaintiff's arrival, he was seated in the waiting area located at the north end of the infirmary. Plaintiff was then called to the nurses benches, located in a corridor that runs east and west, where a nurse took his temperature and blood pressure. Defendant Wheeler's office is located at the west end of the corridor with a full view of the eastward corridor.

11. Defendant Wheeler called plaintiff into her office. Plaintiff, rollator in hand, walked into defendant Wheeler's office and handed her his medication. Defendant Wheeler quickly glanced at the medication but almost immediately turned her attention to plaintiff and his rollator.

12. Defendant Wheeler, in a flat and cold tone, asked plaintiff why he had a rollator? Plaintiff explained that it was prescribed to him by a doctor after suffering a leg injury. Defendant Wheeler asked plaintiff to pull up his pants leg so she could see the lower part of his scar-which runs from the lower calf to his knee. Defendant stated, while she observed plaintiff,

he was not "using it (the rollator) right." However, there is no right or wrong way to walk behind a rollator, and the only misuse of the rollator is to sit on it and roll as advised on the warning sticker. Defendant Wheeler then stated "YOU ARE HEALED, I'M TAKING THE ROLLATOR."

13. Plaintiff, literally, begged defendant Wheeler at least 13 times not to take his rollator from him - citing that he was disabled and could not walk for long distances or stand in the long lines at the institution (lines include, but are not limited to: chow, commissary, legal mail pick-up, package pick-up, library/copies, med-pick-up, fresh favorite pick-up, fundraiser pick-up) that last, generally, 15 minutes to upwards of 2 hours, without experiencing pain. Defendant Wheeler then, with a smirk on her face, said, "Are you done? Okay, well, we are done here. Do you want a cane?" Plaintiff accepted the useless cane and was told to return to his housing unit.

14. Upon arriving back at his housing unit, plaintiff sent an electronic kite to the medical department complaining about defendant Wheeler's wrongful, unnecessary, and deliberate indifferent conduct. The kite was answered by Shawn Shelton, (administrator), stating that the rollators are bad for back and hips, and notified plaintiff that if he was unhappy with her (Wheeler's) decision he would schedule plaintiff for a second opinion. Regardless, plaintiff did not complain of back or hip pain from the use of his rollator and as Ms. Burkhart noted, plaintiff's "gate" is straight. (See exhibit $\underline{B}$, kits and responses).

15. On May 16, 2022, plaintiff was called to the infirmary to receive x-rays of his back and hips. plaintiff then returned to his housing unit and sent a kite to the medical department questioning why x-rays were taken of his back and hips; explaining that he suffered injury to his leg not his back and hips. The kite was answered by Shelton and moot by the time it was answered.

16. On or about May 23, 2022, plaintiff was called to the infirmary for a second set of x-rays on his leg. Prior to being x-rayed plaintiff was seen by "Ms. O.," another licensed practical nurse (this WAS NOT plaintiff's "second-opinion" appointment), whom inquired as to why plaintiff was getting an x-ray on his leg. Plaintiff explained all of the above to Ms. O., who then told plaintiff to sit on the exam table. Ms. O., then observed plaintiff's leg and squeezed plaintiff's calf-which plaintiff had a painful reaction. Plaintiff was then called for his x-ray. After being x-rayed, MS, O called plaintiff back into her office where she gave plaintiff back his rollator. Ms. O stated that she wanted plaintiff to loose weight as a condition of plaintiff having the rollator and told him that she wanted to see him in 30 days. However, in spite of Ms. O's kindness, plaintiff's weight was not a condition to the rollator's original prescription, and should not be now or ever. Plaintiff then returned to his housing unit.

17. Unknown to plaintiff, at the time, sometime between May 23, 2022, and June 16, 2022, when plaintiff was to receive his "second opinion," presumably from Ms. O., Ms. O either quit or was fired from Richland Correctional Institution. Plaintiff submits that, if Ms. O was fired, it was because she treated inmates with courtesy and dignity and not with deliberate indifference. And, if Ms. O quit, it was because she refused to be deliberate indifferent instead of courtious and humane.

18. On June 15, 2022 plaintiff received a medical pass for June 16, 2022. This medical pass is presumed to have been for the "second opinion" although not specified thereon. (See exhibit _C_, medical pass).

19. On June 16, 2022, plaintiff went to the infirmary for his "second opinion". After being seated in the waiting room area, and after vitals were taken in the corridor where the nurses offices are located, plaintiff was called to defendant Wheeler's office. Without any examination or question, defendant

Wheeler stated, "Ms. O should never have given the rollator back to you," and immediately made plaintiff give up his rollator. And again, with full knowledge that plaintiff relied on his rollator for mobility and pain management, defendant Wheeler, smiling, offered plaintiff a cane and ordered him back to his housing unit.

20. Upon arriving at his housing unit, plaintiff sent another kite to the medical department asking again for a specific reason why his rollator was wrongfully taken? The kite was answered, citing that the second x-ray showed that plaintiff's hardware in his leg, were "secure" and "in place." (See exhibit $\underline{D}$, kite and answer). However, the fact that plaintiff's hardware are secure and in place does not mean that plaintiff does not experience pain when walking or standing for more than 5 minutes.

21. Plaintiff pursued and exhausted his administrative remedy by informal complaint. The complaint was denied by the institution's medical department; appeal was fruitless citing no authority over medical; and all decisions were affirmed by the D.R.C., in Columbus, citing pins in the reviewer's own foot. (See exhibit $\underline{D}$ Informal Complaint/Grievance history).

23. Defendant Wheeler's unlawful conduct of seizing plaintiff's rollator has erected barriers to access of all institutional services as described in paragraph 13 of the complaint, in violation of the Americans With Disabilities Act (ADA), 42 U.S.C. § 12131, 12132.

24. Defendant Chambers-Smith as the direct of the D.R.C., whose authority under State law is pursuant to R.C. 5120. et seq., while not directly involved with defendant Wheeler's aforementioned conduct, is responsible as a respondeat superior to enforce the relief to be requested by plaintiff, is granted.

V.    Relief Requested

Plaintiff prays that the court grant the following relief:

1.   As to defendant Wheeler, in her official capacity, grant plaintiff a permanent injunction to prohibiting defendant Wheeler from rescinding plaintiff's prescribed rollator, protecting the rollator from seizure by Defendant Wheeler.

2.   As to defendant Wheeler, in her individual/personal capacity, grant plaintiff the sum of Five Hundred Thousand Dollars, ($500.000.00), plus One Hundred dollars ($100.00), per day that plaintiff was/is without his prescribed rollator.

3.   As to defendant Chambers-Smith, in her official capacity, grant plaintiff a permanent injunction prohibiting the seizure of plaintiff's rollator by any and all employees of the Ohio Department of Rehabilitation and Corrections for the duration of plaintiff's incarceration.

Signed this _2_ day of _August_ , 2022.

I declare under penalty of perjury that the foregoing is true and correct.

_8 - 2 - 2022_
(Date)

_Michael L Williamson_
(Signature of Plaintiff)

9