UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| MICHAEL L. WILLIAMSON, | ) | Case No. 1:22-cv-1371 |
| | ) | |
| Plaintiff, | ) | Judge J. Philip Calabrese |
| | ) | |
| v. | ) | Magistrate Judge |
| | ) | James E. Grimes, Jr. |
| RACHAEL WHEELER, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**OPINION AND ORDER**

*Pro se* Plaintiff Michael L. Williamson, an Ohio prisoner incarcerated in the Richland Correctional Institution, filed a complaint *in forma pauperis* against Rachael Wheeler, a nurse practitioner at RCI, and Annette Chambers-Smith, Director of the Ohio Department of Rehabilitation and Correction. (ECF No. 1.) He alleges violations of his federal civil rights under 42 U.S.C. § 1983 on the basis of Ms. Wheeler's refusal to allow him a "rollator." He seeks injunctive and monetary relief.

By separate Order, the Court granted Plaintiff's application to proceed *in forma pauperis*. For the reasons stated below, the Court **DISMISSES** his complaint.

**BACKGROUND**

Plaintiff alleges that he suffered an injury to his left leg in 2012, resulting in a metal plate and twelve screws and rods being installed in his leg and leaving him "permanently disabled" and unable to stand for more than five minutes without extreme pain. (ECF No. 1, ¶ 2, PageID #4.) While he was previously incarcerated in

the Marion Correctional Institution, he was prescribed a rollator (a device with a built-in seat) to assist him in walking and standing. (*Id.,* ¶ 4.)

In 2015, Plaintiff was transferred to RCI and, "[s]ometime after April 26, 2022," went to the RCI infirmary requesting a larger, replacement rollator. (*Id.*, ¶ 9, PageID #5.) Initially, "Mr. Gillespie" told him that a larger rollator would be ordered for him. (*Id.*) But during a chronic care appointment with Ms. Wheeler on May 12, 2022, she observed Mr. Williamson's leg and concluded that his leg had healed and that he no longer needed a rollator. (*Id.*, ¶ 9–12, PageID #5–6.) Despite Mr. Williamson's protests and pleas that he could not walk long distances or stand in long lines in the institution without experiencing pain without the rollator, Ms. Wheeler took the rollator from him and offered him only a cane. (*Id.*, ¶ 13, PageID #6.)

Mr. Williamson returned to his housing unit and sent an electronic kite to the medical department complaining of Ms. Wheeler's conduct. Administrator Shawn Sheldon answered the kite and advised Mr. Williamson that rollators are bad for the back and hips and notified him that, if he was unhappy with Ms. Wheeler's decision, he would be scheduled for a second opinion. (*Id.* ¶ 14.) On May 16, 2022 and again around May 23, 2022, Mr. Williamson was called to the infirmary to receive x-rays of his back and hips and for a second set of x-rays on his leg. (*Id.* ¶¶ 15–16, PageID #6–7.) Plaintiff alleges that before he received his official "second opinion," a licensed nurse named Ms. O. gave his rollator back to him. (*Id.*, ¶16.)

2

But on June 16, 2022, when Mr. Williamson went to the infirmary for his second opinion, Ms. Wheeler again took the rollator from him. He was informed following his complaints that his x-rays showed that the hardware inserted in his leg was secure and in place, that rollators were not meant to be long-term, and that his transition to a cane could be addressed by weight loss and other means. (*Id.*, ¶¶19–20, PageID #7–8; ECF No. 1-5, PageID #21 & #26.)

Plaintiff alleges that Ms. Wheeler acted with deliberate indifference to his medical needs in violation of the Constitution in seizing his rollator and has "erected barriers to access of all institutional services" in violation of the Americans with Disabilities Act, 42 U.S.C. § 12132. (ECF No. 1, ¶ 23, PageID #8.) He contends that Director Chambers-Smith, though "not directly involved" in denying him a rollator, is responsible "as a respondeat superior." (*Id.*, ¶24.)

## ANALYSIS

Because Plaintiff is a prisoner proceeding *in forma pauperis* seeking relief from governmental defendants, his complaint is before the Court for initial screening under 28 U.S.C. §§ 1915A and 1915(e)(2)(B). These statutes require district courts to screen all *in forma pauperis* complaints filed in federal court and all complaints in which prisoners seek redress from governmental entities, officers, or employees and to dismiss before service any such complaint that the court determines is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010).

Although a complaint filed by a *pro se* plaintiff is "liberally construed" and "held to less stringent standards than formal pleadings drafted by lawyers," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)), a *pro se* complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face'" to avoid a dismissal for failure to state a claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *Hill*, 630 F.3d at 470–71 (holding that the "dismissal standard articulated in *Iqbal* and *Twombly* governs dismissals for failure to state a claim" under Sections 1915A and 1915(e)(2)(B)).

Under these governing standards, the Court finds that Plaintiff's complaint must be dismissed under Sections 1915A and 1915(e)(2)(B) because it fails to allege a plausible federal claim upon which he may be granted relief.

## I. Deliberate Indifference

For a prisoner to demonstrate a constitutional claim of deliberate indifference under Section 1983 with respect to his legitimate medical needs, he must show both objective and subjective components. *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 895 (6th Cir. 2004) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). The objective component requires a plaintiff to plead facts which, if true, establish that he had a "sufficiently serious" medical need. *Reilly v. Vadlamudi*, 680 F.3d 617, 624 (6th Cir. 2012). "Seriousness is measured objectively, in response to contemporary standards of decency." *Id*. (internal quotation marks and citations omitted). "As the Supreme Court explained in *Farmer*, '[t]he inmate must show that he is incarcerated

4

under conditions posing a substantial risk of serious harm'" to him. *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (quoting *Farmer*, 511 U.S. at 834).

The subjective component requires the inmate to show that the defendant had "a sufficiently culpable state of mind in denying medical care." *Reilly*, 680 F.3d at 624. To satisfy this component, a prisoner must show that the defendant "perceived facts from which to infer a substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk." *Comstock v. McCrary*, 273 F.3d 683, 703 (6th Cir. 2001). Allegations of medical malpractice or negligent diagnosis and treatment are insufficient to state a claim for deliberate indifference. *Jennings v. Al-Dabagh*, 97 F. App'x 548, 549–50 (6th Cir. 2004).

Even assuming Plaintiff's own assertion that he needs a rollator to walk long distances and stand in long lines in the institution without experiencing pain is sufficient to demonstrate that he has a sufficiently serious medical need for purposes of establishing the objective component of his claim, his allegations are insufficient to demonstrate the subjective component. Plaintiff has not alleged facts supporting plausible inferences that either Defendant subjectively drew an inference that his failure to use a rollator created a substantial risk of harm to him yet intentionally disregarded such a risk.

Rather, Plaintiff's complaint and exhibits on their face make clear that he has regularly seen RCI prison medical staff for various conditions in chronic care and that he was seen and evaluated and given x-rays in connection with his request for a larger rollator due to the condition of his leg. After x-rays and observation, Ms. Wheeler

5

and other medical staff determined that Mr. Williamson no longer needed a rollator to assist him. X-rays revealed that Mr. Williamson's leg was stable and healed, and prison medical staff have the opinion that rollators are not intended for long-term use and are bad for the back and hips. Medical staff instructed Mr. Williamson to lose weight and walk with a cane instead.

While Plaintiff disagrees with the assessment of prison medical staff and desires a rollator rather than transitioning to a cane, a prisoner's disagreement with the level of testing or treatment he receives does not rise to the level of a constitutional violation. *See Dodson v. Wilkinson*, 304 F. App'x 434, 440 (6th Cir. 2008). "[D]ifferences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnosis or treatment are not enough to state a deliberate indifference claim." *Ward v. Smith*, 100 F.3d 958 (TABLE), 1996 WL 627724, at *1 (6th Cir. Oct. 29, 1996). Where, as here, a prisoner has received some medical care for his condition and the dispute concerns the adequacy of the treatment, he must show that the treatment he received was "so woefully inadequate as to amount to no treatment at all." *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011) (quoting *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976)). Plaintiff's allegations do not reasonably support such an inference.

Plaintiff's complaint also fails to allege a plausible constitutional claim against Director Chambers-Smith for the reason that she was, admittedly, "not involved" in his medical care. (ECF No. 1, ¶ 24, PageID #8.) It is well established that liability

6

under Section 1983 cannot be imposed on supervisory officials solely on the basis of *respondeat superior*. *Okoro v. Scibana*, 63 F. App'x 182, 184 (6th Cir. 2003).

## II. Americans With Disabilities Act

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. To establish disability discrimination under Title II of the ADA, a plaintiff must prove: (1) he has a disability; (2) he is otherwise qualified for the benefit in question; and (3) he was excluded from the benefit due to discrimination solely on the basis of his disability. *See Jones v. City of Monroe*, 341 F.3d 474, 477 (6th Cir. 2003).

Plaintiff's complaint fails to state a plausible claim against Defendants under the ADA because he does not allege facts supporting a plausible inference that he was deprived of, or precluded from participating in, any prison program or service "on the basis of" a disability. Rather, he contends that he was wrongly denied the medical device he desires to assist him in walking and standing. Plaintiff's disagreement with the medical treatment he has been provided does not provide a basis for relief under the ADA. *See Watson v. Mohr*, 2:17-cv-457, 2017 WL 6383812, at *5 (S.D. Ohio Dec. 14, 2017) (report and recommendation) (finding that a plaintiff failed to state a claim for relief under the ADA for the denial of medical treatment where the claim was "merely an Eighth Amendment deliberate indifference claim in another statutory guise," noting that "[n]either medical treatment decisions nor medical malpractice . . . may form the basis of a claim under the ADA"). "The ADA does not create a

7

remedy for medical malpractice." *Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir. 1996). Further, Plaintiff has not alleged facts permitting a plausible inference that he is unable to walk to or access the prison's programs and services with the assistance of a cane.

## CONCLUSION

For the foregoing reasons, the Court **DISMISSES** Plaintiff's complaint pursuant to 28 U.S.C. §§ 1915A and 1915(e)(2)(B). Further, pursuant to 28 U.S.C. § 1915(a)(3), the Court certifies that an appeal from this decision may not be taken in good faith.

**SO ORDERED.**

Dated: November 14, 2022

J. Philip Calabrese
United States District Judge
Northern District of Ohio